**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RADCLIFFE MANYAN, SR.,<br>as next of kin and as the Co-Personal<br>Representative of the Estate of Maurica<br>Alex Manyan<br>4720 Quimby Avenue,<br>Beltsville, MD 20705<br><br>SHERENE MANYAN,<br>as next of kin and as the Co-Personal<br>Representative of the Estate of Maurica<br>Alex Manyan<br>4720 Quimby Avenue,<br>Beltsville, MD 20705<br><br>TO THE USE OF DAVID BARRINGTON<br>HARRIS, JR.<br>Next Friend and Father of Son D.M., next of<br>kin<br>2442 Martin Luther King, Jr., SE, Apt. 517<br>Washington, DC 20020-5816<br><br>       Plaintiffs,<br><br>v.<br><br>**DISTRICT OF COLUMBIA**<br>a municipal corporation<br>441 Fourth Street, NW<br>Washington, D.C. 20001<br>**Serve on:**<br>MAYOR MURIEL BOWSER<br>Office of Mayor<br>1600 Pennsylvania Avenue, NW<br>Washington, D.C. 20001<br>Designee:<br><br>OFFICE OF THE ATTORNEY GENERAL<br>Brian Schwalb<br>District of Columbia<br>441 Fourth Street, NW<br>Washington, D.C. 20001<br><br>and | CIVIL ACTION NO.: |

**JESSE PORTER, JR.**
1217 Upshur St., NE,
Washington, DC, 20017-3831

and

**PORTER CONSULTING AND EXPERT**
**TACTICAL TRAINING, LLC**
1200 G Street NW, Suite 800
Washington, DC, 20005
**Serve On**:
Jesse Porter, Jr.
1217 Upshur St., NE,
Washington, DC, 20017-3831

600 Ava Circle NE
Washington, District of Columbia, 20017

and

**ANTHONY MICKENS**
3310 Croffut Pl SE
Washington, DC 20019

and

**BYRON PURNELL**
5002 Hayes Street, Northeast
Washington, DC 20019

            Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

        Plaintiffs, RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their

capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and  David

Harris, as father and next friend of D.M., file this action under the Survival Act of the District of

Columbia, codified as D.C. Code § 12-101 for claims of wrongful death, negligence, gross

negligence and related claims arising out of the August 4, 2022 shooting death of their daughter, Officer Maurica Alex Manyan.

## **INTRODUCTION**

1.    This is an action for money damages brought under the of the District of Columbia, the Constitution of the United States, and various applicable federal laws against the named defendants in this action.

2.    These claims arise out of the unlawful and tortious actions of Jesse Porter, Jr., Anthony Mickens, various members of the Metropolitan Police Department; and, ranking officials of the government of the District of Columbia.

3.    It is alleged that Jesse Porter, Jr., individually and as a representative of his company, Porter Consulting and Expert Tactical Training LLC and as an agent of the District of Columbia, Anthony Mickens (former Special Police Officer with the District of Columbia Public Library) and Byron Purnell (Metropolitan Police Department, Sgt.), sued in their individual and official capacities, while engaged in an employment contract with the District of Columbia and at the behest and sanctioning of the District of Columbia Public Library Special Police Force and for the benefit of the District of Columbia, fatally shot Maurica Manyan after the completion of an ASP baton training session, unreasonably and unlawfully seizing her and thereby violating her rights protected by the United States Constitution as well as the laws of the District of Columbia and federal statutes.

4.    It is further alleged that the Defendant, District of Columbia, despite having a substantial history of complaints against its permitting live and loaded firearm(s) and ammunition in training sessions and failing to provide adequate security and adequate security measures at the Anacostia Library, located at 1800 Good Hope Road, Southeast, Washington,

District of Columbia (Anacostia Neighborhood Library) where Mr. Porter was permitted to carry a live and loaded firearm(s) (a handgun) against the laws of the District of Columbia prohibiting live and loaded firearm(s) in the Library/ building/training sessions; whereupon Defendant Porter fatally shot Maurica Manyan.

5.   It is further alleged that the District of Columbia failed to implement measures to ensure persons were not permitted access to the Anacostia Library with firearm(s), ammunition, or weapons of any sort and maintained a pattern and practice, over the objections of special police officers subjected to training, of actually allowing trainers to keep on their person live and loaded firearm(s) and ammunition in the training building.

6.   It is further alleged that the District of Columbia promulgated and maintained a policy and had a well-known common practice of permitting police officers and former police officers, including Jesse Porter, Jr., to carry handguns, ammunition, and weapons in training sessions (despite the laws of the District of Columbia prohibiting same); and also, that policy included the carrying of handguns, ammunition, and weapons past library security and into the Anacostia Library demonstrating a deliberate indifference to the life and safety of its library patrons, including Ms. Manyan.  This well-known practice and policy created a state of danger for Ms. Manyan at all relevant times and was officially adopted and promulgated by police officers and high-level officials in the District of Columbia.

7.   It is further alleged that the Defendant, District of Columbia, by and through the Mayor of the District of Columbia failed to properly train, supervise and otherwise enforce District of Columbia laws and Library Special Police Department policies or Metropolitan Police Department Policies and investigate/follow-up public complaints of malfeasance from other citizens of the District of Columbia prior to and after the incident complained of in

this case.  The District of Columbia is categorized as a local government and is responsible for the actions of Defendants, their agents, contractors, servants and/or employees, and is a fully operational government.  At all times relevant herein, these Defendants were responsible for the actions and omissions of their police officers with respect to the events detailed herein. These Defendants are responsible for the events descried herein because they did not have adequate practices and procedures for monitoring, planning, conducting and communicating with other agencies with respect to firearm(s) free training exercises with regard to protecting officers and trainees and assessing and communicating with other law enforcement agencies regarding training exercises, including their location and the prohibition on having live and loaded weapons at training exercises.

## PRE-SUIT REQUIREMENTS

8.   Plaintiffs have satisfied the requirements of the Federal Tort Claims Act; D.C. Code § 12-309; by serving a proper notice of claim upon the District of Columbia within six months of the complained of incident; and again, on or about September 7, 2023.  Additionally, a report was written within the regular course of business, documenting this incident by a Metropolitan Police Department officer.  It was made public on or about August 5, 2022.

9.   Plaintiffs have satisfied any pre-suit requirement to file their claim with the appropriate federal agency under 28 U.S.C. § 2675 on or about September 7, 2023 prior to bringing this action in the United States District Court for the District of Columbia.

## JURISDICTION AND VENUE

10.   Jurisdiction is proper under 28 U.S.C. § 1331, §1343 and 42 U.S.C. §§ 1983, 1985, and 1988; as well as pursuant to D.C. Code § 11-921; and the 4th and 5th Amendments to the United States Constitution.

11.   Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391 in that Defendants reside in the District of Columbia and all Defendant Officers worked in the District of Columbia at the time of the events alleged herein; their employer, the District of Columbia, Anacostia Neighborhood Library and Porter Consulting and Expert Tactical Training LLC, are also located in the District of Columbia. The actions complained of occurred in the District of Columbia.

## PARTIES

12.   At all times relevant hereto, Plaintiffs Radcliffe Manyan, Sr., and Sherene Manyan, are the natural father and mother (respectively) of Maurica Manyan, a former District of Columbia Public Library Special Police Officer shot and killed by Jesse Porter, Jr.   Plaintiffs Radcliffe Manyan, Sr. and Sherene Manyan suffered emotional distress, physical injury, loss of reputation, loss of filial relationships, suffered loss of support and companionship, and will continue to suffer financial hardship with the loss of their daughter, upon whom they were financially dependent.   Plaintiffs bring the following action in their individual capacity and in their capacity as personal representatives of the Estate of Maurica Manyan; and who bring this action under the District of Columbia Survival Act, D.C. Code § 12–101 and under the District of Columbia Wrongful Death Act, D.C. Code § 16-2701.  Both Radcliffe Manyan Sr.

and Sherene Manyan received maintenance and assistance from Maurica Manyan and would have continued receiving maintenance and assistance had she lived.

13.     At all times relevant hereto, Plaintiff D.M., a minor child, is the natural and biological son of Maurica Manyan (deceased).  Plaintiff D.M. suffered emotional distress, physical injury, loss of reputation, loss of filial relationships, suffered loss of support and companionship, and will continue to suffer financial hardship with the loss of his mother, upon whom he was financially dependent.   Plaintiff brings this action in his individual capacity through his biological father, David Barrington Harris, Jr., Next Friend and Father of D.M., pursuant to the District of Columbia Wrongful Death Act, as a primary beneficiary, D.C. Code § 16–2701.  Minor child D.M. received maintenance and assistance from Maurica Manyan and would have expected to continue receiving maintenance and assistance had she lived.

14.     At all times Defendants District of Columbia is a municipal corporation; of which the District of Columbia Public Library is a sub-agency; it, along with Mayor MURIEL BOWSER and the office of Mayor, are the entities that contracted with Jesse Porter, Jr. and Porter Consulting and Expert Tactical Training LLC continuing a policy and practice of permitting armed persons in the Anacostia Neighborhood Library, in violation of D.C. statute and local laws and in training sessions despite being aware of prior complaints of the danger posed to trainees permitting persons to enter the Library armed with firearm(s) and ammunition as well as prior complaints of permitting trainers to conduct training session while carrying a live and loaded firearm(s) and ammunition on their body.  Their duties included the supervision, discipline and training of Defendants Jesse Porter, Anthony Mickens, Byron Purnell, and other sworn members of MPD and D.C. Public Library Police Force at the time of the events described herein.  Their responses to the reports of illegal and tortious activities of armed persons

entering the Anacostia Neighborhood Library and complaints of persons being armed with live and loaded firearm(s) and ammunitions at police training events was so inadequate or nonexistent as to constitute deliberate indifference to or tacit authorization of the alleged offensive practices.  There was an affirmative causal link between the Defendants' inactions and Maurica Manyan's fatal injuries and constitutional deprivations.  Finally, the District of Columbia controls, hires, fires, and directs the decision-making members of the Metropolitan Police Department and the District of Columbia Public Library Special Police in the activities complained of in this complaint.  At all times, Defendant Douglas Morency worked as the public safety director for the District of Columbia Public Library System; a 36-member police force; having six police cruisers, and for which officers patrol 26 library branches throughout the District of Columbia.  Morency's duties included the supervision of Defendants Porter, Mickens, Purnell and other special police officers at the time of the events described herein.  To establish and implement safety responses to reports of illegal and tortious activities of armed persons entering the Anacostia Neighborhood Library.  Morency's response to complaints of persons being armed with live and loaded firearm(s) and ammunitions at police training events was so inadequate or nonexistent as to constitute deliberate indifference to or tacit authorization of the alleged offensive practices.  There was an affirmative causal link between the Defendants inactions and Maurica Manyan's fatal injuries and constitutional deprivations.  Finally, Morency controls, hires, fires, and directs the decision-making members of the public library system as to safety of the various library locations and all patrons within and the Public Library Special Police in the activities complained of in this complaint.

15.     At all times Defendant Jesse Porter, Jr. ("Porter"), the shooter, and Porter Consulting and

Expert Tactical Training LLC contracted with co-defendant District of Columbia and acted at

the behest of the District of Columbia when he fatally shot Marica Manyan upon being

permitted to enter and remain at the Anacostia Neighborhood Library armed with a loaded

firearm(s).

16.     At all times, Defendant Anthony Mickens ("Mickens") and Byron Purnell ("Purnell") worked

with Porter on the day he fatally shot Ms. Manyan.  Defendants Mickens and Purnell were

also sworn members of the Metropolitan Police Department ("MPD") and/or the DC Public

Library ("DCPL") Special Police at all relevant times and had a statutory obligation to "to

make arrests for offenses committed in their presence, D.C. Code § 5-115.03, and are in that

sense considered to 'be always on duty, '" see District of Columbia v. Coleman, 667 A.2d

811, 818 n.11 (D.C. 1995).  Both Mickens and Purnell acted as assistants to co-defendant,

Porter, and were regularly in close contact with Porter since the beginning of his work

relationship, which started at the MPD.  Mickens and Porter were both expert, veteran trainers

and sworn members of a police agency.  Public Records indicate that Mickens as of 2018 was

a special police officer with the District of Columbia Public Library.  Both Purnell and

Mickens had a duty to stop Porter's carrying of a live and loaded firearm(s) open and

notoriously before, during, and after the training session, but breached that duty by allowing

Porter to enter the library with a loaded firearm(s) which had no use at the training. Therefore,

there was no legitimate basis to allow a loaded firearm into the library.

### FACTUAL BACKGROUND AND STATEMENT OF FACTS

I.      **THE DEFENDANTS' PERMITTING UNLAWFUL WEAPONS INTO DISTRICT OF COLUMBIA PUBLIC LIBRARIES AND TRAINING SESSIONS IS A PART OF A WIDESPREAD AND WELL-KNOWN**

## **PATTERN AND PRACTICE OF ILLEGAL/DANGEROUS CONDUCT SPANNING YEARS**

17.   The District of Columbia and all other defendants have known or should have known for years that officers and former police officers given broad authority as sworn or former sworn members of the Metropolitan Police Department and other special police agencies in the District of Columbia engaged in a pattern or practice of illegal activities such as the ones alleged in this complaint.

18.   Despite actual or constructive knowledge of this pattern or practice, the District of Columbia condoned misconduct committed by these persons by ignoring widespread abuses.  Rather than discontinuing the practice of entering public buildings, such as the Anacostia Neighborhood Library, armed with firearm(s) and ammunition and other various weapons or instituting meaningful reforms and supervision after numerous allegations and scandals, the District of Columbia merely ignored the abuses periodically.  And while the specific names of the officers and former officers committing said abuse changed throughout the years, their officers' misconduct remained the same.

19.   The conduct of the Defendant officers and former officers was at all times incidental to the performance of the duties that the employer, be they employee or independent contractor, entrusted to said defendants and was within the scope of their employment, and for the benefit of their employers District of Columbia, the District of Columbia Public Library and/or the Metropolitan Police Department.  Furthermore, the other Defendants benefited from the actions of the Defendants here.

20.   Public records reflect that the District of Columbia library public safety department's training and development coordinator left in July of 2022.

10

21.   The public library contracted with Defendant Porter shortly thereafter.  Porter was selected, hired and paid to train the library police.  The D.C. Public Library specifically hired Porter Consulting and Expert Tactical Training LLC because of Porter's training as a former Metropolitan Police Officer.

22.   Porter's contract agreement with the Public Library, dated June 30, outlined specific training Porter agreed to provide. It listed classes in use of force, de-escalation, the use of extendible batons and handcuffing techniques.  The contract did not provide for live and loaded firearm(s) and ammunition training.

23.   The contract also did not require Porter to adhere to the building policy prohibiting live and loaded firearm(s) and ammunition on the building grounds or in the training session.

24.   Prior to allowing Defendants to carry into and conduct training sessions with live and loaded firearm(s) and ammunition, numerous complaints were made to personnel within the District of Columbia Public Library agency with decision making authority, as well as to the Washington D.C. Metropolitan Police Department with decision making authority, the dangerous practice of having live and loaded firearm(s) and ammunition in training sessions. Specifically:

   a.   On or about August 2020, Tiffany Hedgepeth complained specifically about the dangerous practice of allowing live and loaded firearm(s), ammunition and other deadly weapons in training sessions, such as the practice of Defendant Porter's carrying into and during a training session his loaded firearm(s) as complained of in this complaint.

   b.   Prior to the incidents complained of in this Complaint Ancel Carter also complained of the widespread and common practice of the District of Columbia's permitting live and loaded firearm(s) and ammunition in training sessions.

   c.   Prior to the incidents complained of in this Complaint Bonita Simpkons also complained of the practice of permitting live and loaded firearm(s) and ammunition in training sessions and into buildings for which it was prohibited by D.C. law to carry live and loaded firearm(s) and ammunition into.

    d.   Prior to the incidents complained of in this Complaint, the District of Columbia was on specific notice of other recent, and locally well-publicized, cases of trainees being shot during or after training session, by trainers, using live and loaded weapons (firearm(s) and ammunition).

        See    https://www.nbcwashington.com/news/local/police-trainee-shot-in-maryland-files-lawsuit/1964555/.

    e.   Prior to the incident complained of in this Complaint the District of Columbia Public Library special police force was aware of well-publicized recent examples of the dangers to police officer trainees where trainers were armed in training sessions, yet continued a pattern and practice of permitting trainers to train with live and loaded weapons on their person.

25.    The District of Columbia was thus, on notice from at least the year 2020 of the potential for abuse associated with allowing or permitting weapons, firearm(s), and ammunition inside the Anacostia Neighborhood Library and live and loaded firearm(s) in police training sessions.

26.    Around the same time, allegations surfaced regarding weapons inside the public libraries and the District of Columbia's practice and policy to permit sworn members and former sworn members of local police agencies entrance into the public libraries armed with firearm(s), ammunition and other weapons.

27.    Despite being on specific notice of misconduct that plagued the public libraries and training sessions, the District of Columbia continued to permit live and loaded firearm(s) and ammunition in training sessions and failed to have and/or enforce a policy prohibiting same; continued to permit the unauthorized access to the public libraries and failed to properly train and establish policies prohibiting access to the public libraries by sworn members of the District of Columbia Police agencies; established a pattern and practice of allowing armed persons into the public libraries; continued a practice of allowing un-insured persons and businesses such as Porter Consulting and Expert Tactical Training LLC to conduct training sessions inside the public libraries, armed with firearm(s) and ammunition; and, continued a pattern and practice in allowing persons armed with firearm(s) and ammunition, discovered

inside the public libraries to remain in said library, creating a specific danger for persons like Maurica Manyan and demonstrating a reckless disregard for the safety of Maurica Manyan.

28.     Further, despite being on notice of the particular dangers of constitutional depravations to trainees and other persons in the zone of danger, Defendants District of Columbia failed to train the involved sworn members of the MPD and the Public Library Special Police Force on the following:

    a.  Storing one's live and loaded firearm(s) (weapon) in a safe place outside of the training building before entering the building or entering the training space;

    b.  when to secure your own and verify that no person has a live and loaded firearm(s) and ammunition in a training space;

    c.  prohibiting police officers and former police officers from having live and loaded firearm(s) and ammunition in the public library;

    d.  when to report the use of or presence of live and loaded firearm(s) and ammunition in the training space or building prohibiting same;

    e.  prohibiting police officers and former police officers from having live and loaded firearm(s) and ammunition in a training room/space or training session;

    f.  the necessity of promptly stripping Porter or any police officer/former police officer of his/her live and loaded firearm(s) and ammunition upon observing same upon entering the public library, before, during and after baton training;

    g.  the necessity of immediately effectuating an arrest when a misdemeanor occurs in their presence;

    h.  the necessity of and when to verify no police officer or trainer has a live and loaded firearm(s) or ammunition inside a training session or the building for which training is to occur;

    i.  The necessity of having a no-live and loaded firearm(s) and ammunition policy posted and communicated to all persons participating in a training session;

    j.  When to report the pointing of a training gun at a trainee;

    k.  How to report the pointing of a training gun at a trainee;

    l.  The prohibition against pointing a live and loaded firearm(s) at any person; even in jest; and

m.  The inherent dangers of pointing a live and loaded firearm(s) at any person at any time.

29.  In or about June 2022, the District of Columbia contracted with Porter Consulting and Expert Tactical Training LLC, through its owner/operator and agent Jesse Porter, Jr., requiring Porter to conduct ASP baton training for District of Columbia Public Library Special Police Officers, including Maurica Manyan.

30.  Said contract did not have a clause prohibiting Porter and his employees from entering the training location, Anacostia Neighborhood Library, armed with firearm(s) and ammunition.

31.  Said contract did not require Jesse Porter, Jr., his agents, assigns and employees to check/secure their live and loaded weapons before entering the Anacostia Neighborhood Library.

32.  Said contract permitted Jesse Porter, Jr. to enter and remain on the Anacostia Neighborhood Library armed with firearm(s) and ammunition throughout the duration of the subject training and after its conclusion.

33.  In sum, for many years before the Defendants illegally and fatally shot Maurica Manyan, the District of Columbia knew of the illegal acts regularly committed by its police units, former police officers and contractors regarding use of the public libraries armed with weapons as well as the dangerous practice of conducting training sessions while armed with live and loaded firearm(s) and ammunition.

II.  **DISTRICT OF COLUMBIA, ANTHONY MICKENS AND BYRON PURNELL KNOWLINGLY ALLOWED DEFENDANTS JESSE PORTER, JR., AND PORTER CONSULTING AND EXPERT TACTICAL TRAINING LLC TO CONTINUE THE PATTERN OF ILLEGAL CONDUCT**

34.  The D.C. Public Library is an independent city agency that has its own police department. Officers, who are licensed to be armed, are responsible for public safety at library locations,

35.   Much like members of the aforementioned police forces or other patrons of the District of Columbia Public Libraries, Defendants Porter, Mickens and Purnell were current members or former members of local District of Columbia police agencies, with broad authority to roam the city ostensibly and enter District of Columbia buildings armed with weapons, including firearm(s) and ammunition.

36.   Although the District of Columbia was put on notice to conduct internal investigations into complaints of inadequate safety measures for trainees in training sessions and the multiple requests to prohibit armed persons from entering training buildings and training sessions, and thus had ample opportunity to correct the complained of unlawful and dangerous behavior, it failed to provide the necessary oversight, discipline, or training to ensure that the defendants in this case did not engage in the same pattern of dangerous misconduct.

37.   Nevertheless, on August 4, 2022, Porter was permitted to, against the unambiguous prohibition of live and loaded weapons in the Anacostia Neighborhood Library, carry and maintain his weapon with live and loaded ammunition into the library during ASP Baton training and to maintain said weapon on his hip openly and notoriously after training was concluded.

38.   Further, against unambiguous prohibitions of live and loaded weapons in the Anacostia Neighborhood Library, co-defendants Mickens and Purnell, having a statutory obligation to "make arrests for offenses committed in their presence, D.C. Code § 5-115.03, and are in that sense considered to 'be always on duty, '" see District of Columbia v. Coleman, 667 A.2d 811, 818 n.11 (D.C. 1995), permitted Defendant Porter to carry his live and loaded firearm(s) open and notoriously into the Anacostia Neighborhood Library before the training session, during the training session and after the training session ended.  Mickens and Purnell made

no effort to arrest Porter or command Porter to remove his live and loaded firearm(s) from his hip; the room; and/or even the building continuing the pattern and practice of permitting law enforcement and former law enforcement to continue the pattern of illegal conduct.

39.    As a result and direct consequence of Defendants' actions, what began as a normal day for 25-year old D.C. Public Library, Special Police Officer, Maurica Manyan ended with Manyan dying from a gunshot wound to the chest, on the floor of the Anacostia Neighborhood Library.

40.    On August 4, 2022, Manyan was fatally shot after ASP Baton and Handcuff Technique Training was over and all participants and trainers took off their protective gear; cleaned up their equipment and materials; completed final paperwork, when one of her trainers, Porter, aimed his loaded Glock 26, 9mm pistol at Manyan's chest, depressed the trigger and shot Manyan as she posed for a picture with her fellow officers, effectuating an unconstitutional seizure of her body under Amendment 4 to the United States Constitution.

41.    Porter, a retired 25-year veteran of the Metropolitan Police Department is the owner of Porter Consulting and Expert Tactical Training LLC, a Washington D.C. limited liability company operated by Porter. Porter and his company were contracted to provide ASP Baton training to Manyan and her 3 fellow co-workers.

42.    Porter was not licensed to provide firearm(s) training in the District of Columbia.

43.    Porter was joined by Byron Purnell, an active-duty MPD sergeant hired in 1996, and a former co-worker of Porter.

44.    Purnell was employed with Porter Consulting and Expert Tactical Training LLC for nearly one year at the time of the shooting. Purnell actively participated in the training with Porter and was described by witnesses as a "second trainer."

45.     In addition to the affirmative duty to arrest Porter, Purnell at all relevant times had a duty to report any unlawful conduct observed by him to the local police agencies; including, but not limited to the use and carrying of handguns and firearm(s) inside the premises by Porter.

46.     The highest ranking DCPL officer on scene was lead officer Anthony Mickens.

47.     Mickens was also duty bound to arrest Porter and report unlawful conduct occurring inside the Anacostia Neighborhood Library, at all relevant times was the subject of prior complaints of corruption and theft and has been accused of misconduct and policy violations in connection with a pending wrongful termination lawsuit filed by another DCPL SPO.

48.     The August 4, 2022 ASP Baton training was scheduled to begin at 8:00 a.m. on the lower floor of the Anacostia Neighborhood Public Library.

49.     The lower-level library entrance is only accessible with a DCPL identification swipe card. The second-floor public entrance is generally staffed with an armed officer.

50.     The training was being monitored via CCTV by a DCPL Supervisory Officer.

51.     Porter entered the Anacostia Neighborhood Library with a loaded firearm(s); holstered an unconcealed on his hip upon arrival. The Glock pistol was clearly visible on Porter's right hip, as he was dressed with his shirt tucked into his pants.

52.     During the morning training session, the Special Police Officers reviewed a presentation but did not participate in physical training.

53.     The group began an interactive portion of the training where Maurica Manyan was the first person that Porter called on to read something from a PowerPoint presentation that was being projected to the class.

54. Porter, visibly irritated, expressed that Maurica Manyan was reading "too slow for his liking" and announced to Mickens in front of the class that the next time he should bring a "white helmet" for Manyan.

55. Porter's comments violated DCPL's harassment policy in the presence of Lead Officer Mickens, who took no action against Porter and who voiced no objection to the repeated violations of the DCPL harassment policy.

56. Later, Porter asked Maurica Manyan a question to which she responded with what Porter viewed as the wrong answer. In response, Porter pointed his orange training gun at Manyan while stating, "bang, bang, wrong answer" before he simulated shooting her. This conduct, observed by Mickens violated DCPL Library Behavior Policy and DCPL's harassment policy, who once again, took no action against Porter.

57. After the lunch break, the SPO's re-dressed in their equipment, which included bullet proof vests and began stretching.

58. Porter led the physical component of the training, which involved the SPOs being partnered in pairs and practicing baton techniques on a large sandbag. The training progressed to handcuffing techniques and the SPOs began to apply the techniques modeled earlier that day.

59. Upon the conclusion of all training, all of the SPOs removed their bulletproof vests, removed their training equipment and any other protective gear, sat down for a moment and completed paperwork.

60. After doing so, the SPOs, Porter and Purnell, began to move toward the front of the room to pose for a picture. Anthony Mickens was the individual tasked with taking the photo. Porter asked that a photo be taken with his phone, in addition to Mickens's phone.

61.   Maurica Manyan apparently forgot to put her mask on and reached to grab her mask. Manyan never left the formation during this period of time. Shortly after, she began fixing her hair. Porter commented, "Oh, Lord, come on Rihanna."

62.   At approximately 3:30 pm, Porter stepped out of the line for posing for the photograph, turned, withdrew his loaded firearm(s), aimed at Mauica Manyan's chest and depressed the trigger of his weapon; shooting Manyan at close range in her chest, as she stood shoulder-to-shoulder between her classmates, still posing for a photograph.

63.   All classmates, standing to the immediate left and right of Manyan and in the zone of danger, stood terrified and shocked from the fear of being shot next and not knowing whether Porter would continue to shoot them as well.  Each then disbursed.

64.   Manyan collapsed in agony and was heard crying and moaning from the pain and suffering from just being shot in the chest at close range.

65.   Within hours of the shooting, District of Columbia Library Public Safety Director, Douglas Morency, resigned from his position, publicly announcing said resignation.

66.   When asked at a press conference why Porter would be in baton training with a live and loaded weapon, DC Police Chief Robert Contee responded, "[i]t is not good practice to do that."

67.   DC Code § 7–2509.07 prohibits any person holding a license to carry a pistol from bringing such a weapon into "a building or office occupied by the District of Columbia, its agencies or instrumentalities."

68.   While the Law Enforcement Officers Safety Act (LEOSA) affords qualified active and retired law enforcement officers the privilege to carry a concealed firearm(s) in the District of Columbia, explicitly written into the statute are several areas considered off-limits to

those carrying under LEOSA, including restrictions imposed on state or local government property, installations, and buildings.

69.  Certainly, Mickens and Purnell, an active MPD sergeant were sworn to enforce the laws governing the District of Columbia and should have stopped Porter from entering and remaining in the library with a loaded, unconcealed weapon for more than four (4) hours, but consistent with their practice of permitting sworn members and formerly sworn members of local agencies to enter said buildings unlawfully armed, they failed to do so.

70.  These District employees, and potentially others, negligently permitted Porter to unlawfully carry a firearm(s) in a public library in a gross disregard for the safety of Manyan, her co-workers and innocent civilians.

71.  A potential whistleblower and former SPO officer, Hedgepeth advised that she and other employees complained to their superior officers about policy violations related to gun safety at SPO trainings, within the two (2) years preceding Manyan's death. A DCPL Sergeant voiced opposition to the decision to hire Porter but stated her supervisors ignored her opposition allegedly because Porter was thousands of dollars cheaper.

72.  Porter and/or Porter Consulting and Expert Tactical Training LLC did not maintain general liability insurance on the date of the shooting.

73.  Pursuant to Section 202(b) of the District of Columbia Procurement Practices Act of 1985 (PPA), effective February 21, 1986 (DC Law 6-85; DC Official Code §2-302.02(b)); and Chapter 27 of Title 27 of the DC Municipal Regulations, the purpose of the contract insurance requirement policy is to establish a process for:

    a.  Determining the amount and type of insurance to be required in procurement contracts; and

    b.  Standardizing insurance clauses and minimizing risk to the District.

74.  Notwithstanding the foregoing, DCPL and/or the D.C. Office of Risk Management contracted with Porter and his company without verifying the minimum insurance coverage, in violation its own policies, which is negligence *per se,* and without ensuring Porter and his employees had a contractual clause prohibiting the bringing of live and loaded firearm(s) into the building in which training was to take place.  The District of Columbia and DCPL also failed to include a contractual prohibition on the use of live and loaded firearm(s) and ammunition in and after the training sessions, despite multiple prior complaints of danger to the safety of training participants such actions entail.

75.  Maurica Manyan succumbed to her injuries on August 4, 2022, leaving behind her biological son, father and mother; all of whom she was the financial caregiver for and all of whom suffered and continue to suffer severe emotional distress as a result of their loss.

76.  After being shot, Maurica Manyan could be heard moaning and crying in pain and agony from her gunshot wound.

77.  Maurica Manyan suffered conscious pain and suffering immediately after being shot, she was aware of her impending death and suffered until her last breath.

78.  On or about August 25, 2023, Porter entered a valid guilty plea to and was found guilty of involuntary manslaughter for the shooting death of Maurica Manyan in the District of Columbia Superior Court and having been charged by a grand jury of murder in the second degree.

79.  Porter announced in open court a plea of guilty to involuntary manslaughter because he was in fact guilty of the shooting death of Maurica Manyan on August 4, 2022.

80.  All events were captured on CCTV and provided an opportunity for any observing police officer or personnel to intervene in the unlawful and unsafe actions of Porter and his

colleagues in carrying, brandishing, and shooting his live and loaded handgun at Maurica Manyan.

81.   Maurica Manyan did not cause or contribute to her fatal injuries, nor did she have an opportunity to avoid same.

## COUNT I – VIOLATION OF 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION

82.   Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

83.   "The right of the people to be secure in their person's houses, papers, and effect, against unreasonable searches and seizures, shall not be violated and no warrants shall issue but upon probable cause. Supported by oath or affirmation and particularly describing the places to be searched and the persons or things to be seized." Amendment 4, Constitution of the United States.

84.   Defendant Porter's actions, were at all times, as an agent of the District of Columbia instigated by and dependent upon the exercise of the District of Columbia's governmental authority.   Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant, the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

85.   At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, and how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan and her co-trainees.

86.   Defendant Porter, Purnell and Mickens with gross negligence (wantonly, willfully, and/or maliciously) alternatively intentionally, with reckless disregard for human life and

established protected 4th Amendment Rights against unlawful seizure, and without justification assaulted, battered, and detained, and/or otherwise participated in the unlawful and unjustifiable assault, battery and detention of the plaintiff, Maurica Manyan (deceased), in terminating her freedom of movement by intentionally depressing the trigger of his live and loaded firearm(s) while aiming it at her (shooting her, the use of physical force and show of authority), in violation of her rights and privileges and immunities under the United States Constitution, Amendment 4.

87.   Defendant District of Columbia allowed these actions to occur as a result of its actions or omissions, patterns and practices and its policymakers having intentionally adopted the unconstitutional policy that caused the damages in question in this case; namely, permitting live and loaded weapons, including firearm(s) and ammunition into governmental buildings during training sessions and its pattern and practice of allowing police officers and former police officers into federal public library buildings armed with live and loaded firearm(s) and ammunition.

88.   Defendants' actions in assaulting and battering and or detaining the plaintiff under the circumstances described herein constituted an unreasonable seizure of the plaintiff and the use of force upon the plaintiff by defendant Porter was excessive and unreasonable.

89.   At all times described herein, Defendants Porter, Purnell and Mickens acted under color and pretense of law, and under color of statutes, customs and usages of the District of Columbia and for the benefit of and at the behest of the District of Columbia.

90.   The conduct of the defendants as described herein deprived the plaintiff of the rights privileges and immunities guaranteed to her under amendment 4 to the United States Constitution.

91.   As a result of all defendants' actions, the plaintiff suffered physical and non-physical injury and the unjustifiable loss of her freedom life and liberty.

92.   The Plaintiffs' injuries and damages are due solely to and by reason of the negligent and or grossly negligent and or malicious and or willful and or reckless and or unreasonable and or intentional and or ill-willed and or wanton and or grossly negligent acts and or omissions of all defendants, directly and or indirectly without any negligence or want of due care on the part of plaintiff contributing thereto.

93.   Plaintiffs Radcliffe Manyan and Sherene Manyan claim under the Survival Act damages for Maurica Manyan's conscious pain and suffering and future earnings the Estate of Maurica Manyan would have earned had she not died.

94.   Plaintiffs D.M., Radcliffe Manyan and Sherene Manyan claim under the Wrongful Death Act maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, as father and next friend of D.M., demand Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr. and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell in their individual capacity, jointly and/or severally, and Twenty Million Dollars ($20,000,000.00) in punitive damages from Jesse Porter, Jr. and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell; reasonable attorney's fees pursuant to 42 USC sec. 1988, costs and such other and further relief to which Plaintiffs may be entitled.

## COUNT II – VIOLATION OF 5TH AMENDMENT TO THE UNITED STATES CONSTITUTION

95.     Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

96.     "The Fifth Amendment protects individuals from the deprivation of "life, liberty, or property without due process of law." Amendment 5, Constitution of the United States.

97.     Defendant Porter's behavior/actions were at all times as an agent of the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.  Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

98.     At all relevant times, the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, how to train its trainees, as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

99.     Defendant Porter maliciously, intentionally, carelessly recklessly with gross negligence wantonly, willfully, wrongfully, and unreasonably, with reckless disregard for human life; and without justification shot Maurica Manyan depriving her of life without due process of law.

100.    Defendant District of Columbia allowed these actions to occur as a result of its actions accepted practice of permitting armed persons to conduct and be in training sessions with live and loaded firearm(s) and ammunition, despite complaints from special police officers as to the danger said common practice exposed Plaintiff Maurica Manyan to.

101. Defendant Porter's conducting a training session with a live and loaded firearm(s), open and notoriously, and exposing Maurica Manyan to her fatal injury was a direct result of the District of Columbia's official custom, practice, or policy of permitting armed trainers in a training building, and that caused the alleged constitutional violation.

102. Further, the hiring of and permitting of Porter to conduct training with a live and loaded firearm(s) was a course pursued by the District of Columbia as evinced in its decision to contract with co-defendant Porter from the sudden departure of the Public Library Public Safety education and training head.

103. At all times described herein, the defendants acted under color and pretense of law, and under color of statutes, customs and usages of the District of Columbia, and as agents for the District of Columbia and for the benefit of and at the behest of the District of Columbia.

104. The conduct of the defendants as described herein deprived the plaintiff of the rights privileges and immunities guaranteed to her under amendments 4 and 5 to the United States Constitution.

105. As a result of the defendants' actions, the plaintiff suffered physical and non-physical injury and the unjustifiable loss of her freedom life and liberty.

106. All of the Plaintiffs' injuries and damages are due solely by reason of the negligent and or grossly negligent and or malicious and or willful and or reckless and or unreasonable and or intentional and or ill willed and or wanton and or grossly negligent acts and or omissions of defendants, directly and or indirectly without any negligence or want of due care on the part of plaintiff contributing thereto.

107.   Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

108.   Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages and Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendants District of Columbia, Jesse Porter, Jr., Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, jointly and/or severally, and reasonable attorney's fees pursuant to 42 USC sec. 1988, costs and such other and further relief to which Plaintiffs may be entitled

### COUNT III - BATTERY

109.   Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

110.   Defendant Porter's behavior was, at all times as an agent for the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority and under the color of that authority.  Porter at all relevant times engaged in a

function traditionally exclusively reserved to the State, the training of police officers, and, at all times relevant, the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

111. At all relevant times, the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, and how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

112. Defendants' Conduct as described here in was undertaken deliberately with actual malice and constituted an intentional offensive and non-consensual touching of plaintiff.

113. As a result of the aforesaid acts and conduct of the defendants the plaintiff was caused to suffer physical and nonphysical injury; sustain economic damages for the cost of medical treatment; sustained non-economic damages for the pain suffering anguish fear fright humiliation inconvenience and embarrassment for the totality of events that she was forced to endure and was in other ways damaged; was caused to suffer death.

114. Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

115. Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages and Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, in their individual capacities, jointly and/or severally; reasonable attorneys' fees and such other and further relief to which Plaintiffs may be entitled.

### COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

116.    Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

117.    Defendant Porter's behavior was, at all times as an agent for the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.  Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

118.    At all relevant times, the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

119.    Defendant Porter's Conduct was intentional or reckless and caused plaintiff to suffer severe emotional distress upon the realization that she was shot in the chest and was dying.

120.    Defendant Porter's conduct was extreme and outrageous in shooting an unarmed person, Ms. Manyan, after a training session concluded and after she had taken off her protective gear and was merely posing for a photograph; that such conduct is beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

121.    Defendants Anthony Mickens and Byron Purnell were acting within the scope of their employment as sworn members of the Metropolitan Police Department, the District of Columbia Public Library Special Police Force and for the benefit of the District of Columbia at all relevant times in observing and assisting Porter's conducting a training session with a live and loaded weapon on his person.  Further, both Mickens and Byron as sworn law enforcement officers had an obligation to stop Porter from conducting the subject training with a live and loaded firearm(s) and ammunition, yet failed to do so.

122.    Defendant District of Columbia's actions in maintaining a policy and practice of permitting trainers to conduct training sessions with live and loaded firearm(s) and ammunition and failing to require a prohibition of live and loaded weapons in training session after multiple complaints of the danger and unsafe environment created by its practice and policy of allowing police officers and former police officers to maintain their live and loaded weapons in training sessions and training buildings is extreme and outrageous.

123.    Defendants' caused Plaintiff to suffer severe emotional distress as was observed by all witnesses to her shooting; and evinced by her grasping for air, grabbing her chest in disbelief, and struggling to breathe.

124.    All of plaintiffs' claims are due solely to and by reason of defendants intentional or reckless conduct.

125.   Plaintiffs Radcliffe Manyan, Sherene Manyan and D.M. claim relief as the biological father, mother and son (respectively) of Maurica Manyan; for whom each suffered and continue to suffer severe emotional distress, severe mental anguish, loss of society and comfort caused by the loss of Maurica Manyan, including but not limited severe depression, inability to sleep without nightmares, thoughts of suicide, emotional breakdowns, post-traumatic stress disorder, bed-wetting, anxiety, loss of appetite, and severe anger as a direct result of the extreme and outrageous conduct of all defendants.

126.   Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

127.   Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages and Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, in their individual capacity, jointly and/or

severally; and for reasonable attorneys' fees, and such other and further relief to which Plaintiffs may be entitled.

## COUNT V – NEGLIGENCE/GROSS NEGLIGENCE

128.   Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

129.   Defendant Porter's behavior was, at all times as an agent for the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.   Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

130.   At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

131.   Defendants' actions constituted a wanton and reckless disregard of human life with a disregard of the consequences that might ensue as a result of their acts; their actions further constituted an indifference to the duly established right of the decedent and others to be free from unreasonable seizures.

132.   All defendants had a duty not to expose the decedent to unreasonable danger and harm and not to disregard her well established constitutional right under The United States Constitution, Amendment 4 and Amendment 5.

133.   Defendants Mickens and Purnell had a duty to enforce D.C. law prohibiting live and loaded firearm(s) and ammunition inside the Anacostia Neighborhood Library at all relevant times.

134.   Defendant District of Columbia had a duty to enforce D.C. law prohibiting trainers from having and carrying into training buildings live and loaded firearm(s) and ammunition at any time, including after the completion of a training session.

135. All defendants breached their respective duty owed to Plaintiff as a person in the Anacostia Neighborhood Library and person who was participating in a training session prior to being shot by Defendant Porter by:

   a.   Continuing a practice of allowing firearm(s) and ammunition inside training sessions despite complaints against that dangerous practice at least 2 years prior to the shooting death of Maurica Manyan;

   b.   Failing to strip Porter of his live and loaded firearm(s) and ammunition upon seeing him enter the Anacostia Library carrying it open and notoriously;

   c.   Failing to have a policy requiring all trainers to check their live and loaded weapons (firearm(s) and ammunition) prior to entering a training at the start of a training session, during every break in a training session and/or after a training session; and

   d.   Failing to have a posted written prohibition against live and loaded firearm(s) and ammunition in the training room in the Anacostia Library.

136.   As a direct and proximate result of the negligence of each and all of the defendants, plaintiff Maurica Manyan was shot in the chest, suffered traumatic emotional distress, bodily injury, bodily harm, pain and suffering, anguish and death; violating her 4th and 5th Amendment rights under the United States Constitution.

137.   Plaintiffs Radcliffe Manyan, Sherene Manyan and D.M. claim relief as the biological father, mother and son (respectively) of Maurica Manyan; for whom each suffered and continue to suffer severe emotional distress, severe mental anguish, loss of society and comfort caused by the loss of Maurica Manyan, including but not limited severe

depression, inability to sleep without nightmares, thoughts of suicide, emotional breakdowns, post-traumatic stress disorder, bed-wetting, anxiety, loss of appetite, and severe anger as a direct result of the extreme and outrageous conduct of all defendants.

138. Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

139. Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, in their individual capacity, jointly and/or severally, and such other and further relief to which Plaintiffs may be entitled including costs and reasonable attorneys' fees.

## COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

140. Plaintiffs incorporate as if fully stated herein all of the allegations contained in all paragraphs.

141. All defendants' behavior was, at all times were as agents of the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.   Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

142. At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, and how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

143. Defendant Porter's conduct was reckless and a breach of his duty owed to all Plaintiffs to not expose them to unnecessary danger or harm;   caused plaintiffs to suffer severe emotional distress upon the realization that Manyan, their daughter and mother, was shot in the chest and was dying; and, that Manyan's colleagues were standing to the immediate right and left of Manyan, in the zone of danger, at the time of the shooting; Defendants knew or should have known that Plaintiffs would be contacted and informed of Maurica Manyan's death and that such call would constitute a physical impact upon their person, that Plaintiffs would shortly thereafter view Manyan's dead body for identification and other purposes (they did), and that Plaintiffs would eventually view the video of the death (which they have), all of which constitute placing Plaintiffs in the zone of danger and constituting physical impacts.

144. Defendants' conduct was negligent in shooting an unarmed person, Maurica Manyan, after a training session after she had taken off her protective gear and was merely posing for a photograph.

145.   Defendants Mickens and Purnell were acting within the scope of their employment as sworn members of the Metropolitan Police Department and the DC Public Library Special Police Force and for the benefit of the District of Columbia at all relevant times in observing and assisting Porter's conducting a training session with a live and loaded weapon on his person.  Further, both Mickens and Byron as sworn law enforcement officers had an obligation to stop Porter from conducting the subject training with a live and loaded firearm(s) and ammunition.

146.   Defendant District of Columbia's actions in maintaining a policy and practice of permitting trainers to conduct training sessions with live and loaded firearm(s) and ammunition and failing to require a prohibition of live and loaded weapons in training session after multiple complaints of the danger and unsafe environment created by its practice and policy of allowing police officers and former police officers to maintain their live and loaded weapons in training sessions and training buildings is extreme and outrageous.

147.   Defendants' caused Plaintiff to suffer severe emotional distress as was observed by all witnesses to her shooting; and evinced by her grasping for air, grabbing her chest in disbelief, and struggling to breathe.

148.   All of plaintiffs' claims are due solely to and by reason of defendants' negligent and reckless conduct.

149.   On 8/25/2023, Jesse Porter entered a valid guilty plea to and was found guilty of involuntary manslaughter for the shooting death of Maurica Manyan.

150.   Plaintiffs Radcliffe Manyan, Sherene Manyan and D.M. claim relief as the biological father, mother and son (respectively) of Maurica Manyan; for whom each bore and continue to bear severe emotional distress, severe mental anguish, loss of society and comfort caused

by the loss of Maurica Manyan as a result of the extreme and outrageous conduct of all defendants.

151. Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the common law tort of negligent infliction of emotional distress, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

152. Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

153. Maurica Manyan's co-trainees suffered and continue to suffer severe emotional distress at the time of the shooting and continue to suffer severe emotional distress as a result of standing shoulder-to-shoulder of Maurica Manyan at the time of her shooting death. Maurica Manyan's co-trainees' were caused to be in danger of physical injury and feared for their own respective safety as a result of defendants' actions.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, in their

individual capacity, jointly and severally; attorneys' fees and such other and further relief to which Plaintiffs may be entitled.

### COUNT VII - 42 USC SEC. 1983 (EXCESSIVE FORCE RESULTING FROM INADEQUATE TRAINING, SUPERVISION AND DISCIPLINE)

154. Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

155. At all times herein, Defendants were acting under color of law, cover of statutes, ordinances, regulations and customs and usages of the laws of the District of Columbia and as employees and agents the District of Columbia and as such constituted a violation of Title 42 USC, sec. 1983.  At all relevant times Defendants actions implemented and executed a policy statement and decision officially adopted and promulgated by the District of Columbia to permit live and loaded firearm(s) and ammunition in training sessions; and, to allow firearm(s) and ammunition in government buildings, in violation of D.C. Code § 7-2509.07.

156. Defendant Porter's behavior was, at all times, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.

157. Defendants Mickens and Purnell at all times were deemed to be "on duty" as employees of the District of Columbia and sworn members of the MPD and D.C. Public Library Special Police Force when they assisted Porter, Jr. in conducting baton training sessions with Porter's wearing open and notoriously his live and loaded firearm(s) and ammunition on his waist for the entire day.

158. At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, and how to train its trainees; as well

as the District of Columbia's overtly accepted practice of carrying live and loaded firearm(s) into training session endangering the trainees, including Maurica Manyan.

159.    As a direct and proximate consequence of the District of Columbia's grossly inadequate training, supervision and discipline of its officers regarding live and loaded firearm(s) in training sessions and live and loaded firearm(s) in buildings were prohibited by D.C. code, the Defendants deprived Plaintiff Maurica Manyan of the following clearly established rights under the Fourth and Fifth Amendments of the United States Constitution;

    a.   The right to be free from excessive and unreasonable force and seizure;

    b.   the right to be free from deprivation of life and liberty without due process of law;

    c.   the right to be free from summary punishment.

160.    The Constitutional depravations to Maurica Manyan are a direct result of the official custom, practice, or policy of the District of Columbia permitting live and loaded firearm(s) and ammunition in training sessions and in the Anacostia Neighborhood Library that caused the noted constitutional violation.

161.    Manyan was deprived of her constitutional rights, and that this deprivation was also caused by the single municipal decision to permit Porter into the D.C. Public Library with live and loaded firearm(s) and ammunition and conduct a training session with said live and loaded firearm(s) and ammunition, reflecting a deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision, as it did here.

162.    Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

163.   Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., jointly and severally; and, Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendants Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC.; reasonable attorneys' fees pursuant to 42 USC sec. 1988, costs and such other and further relief to which Plaintiffs may be entitled.

### COUNT VIII  - 42 USC SEC. 1983 (FAILURE TO TRAIN, CUSTOM AND POLICY OF INDIFFERENCE UNDER *MONELL*)

164.   Plaintiffs incorporate as if fully stated herein all of the allegations contained in preceding paragraphs.

165.   Defendant Porters behavior was, at all times as an agent for the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.

166.   At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, how to train its trainees as well as

encouraging overtly the practice of carrying a live and loaded weapon into the training session endangering Maurica Manyan.

167.    The conduct of defendant District of Columbia and District of Columbia Public Library Public Safety director, Douglas Morency, in failing to properly train Porter, Mickens and Purnell, and other police officers, including high ranking, command level, and or/ veteran training officers on checking one's live and loaded firearm(s) before entering the public library; on checking one's live and loaded firearm(s) before, during and after a training session; on verifying whether a co-trainer was armed with a live and loaded firearm(s) and ammunition, anytime while in the public library; and, on the necessity of arresting violators of D.C. law prohibiting live and loaded firearm(s) in the training building caused Plaintiff Maurica Manyan to be deprived of her rights, privileges and or immunities secured by the Constitution and the laws of this land, including Amendments 4 and 5 of the United States Constitution.

168.    At all times herein, Defendants were acting under color of law, cover of statutes, ordinances, regulations and customs and usages of the laws of the District of Columbia and at the behest of the District of Columbia and for the benefit of the District of Columbia, when Porter, Purnell and Mickens along with other Public Library special police officers permitted Porter to enter the training building armed with a live and loaded handgun open and notoriously, maintain possession of said handgun throughout and after baton training, and refused to strip Porter of his live and loaded weapon at any time, consistent with the District of Columbia's practice of permitting Porter and other trainers in training sessions to remain armed and dangerous despite numerous specific complaints of said practice within two years prior to the fatal injury of Marica Manyan by Jesse Porter, Jr.

169.    As a direct and proximate consequence of the conduct alleged herein, the Defendants deprived Plaintiff Maurica Manyan of the following clearly established rights under the Fourth, and Fifth Amendments of the United States Constitution:

      a.   The right to be free from excessive and unreasonable force and seizure;

      b.   the right to be free from deprivation of life and liberty without due process of law;

      c.   the right to be free from summary punishment.

170.    The Constitutional depravations to Maurica Manyan are a direct result of the official custom, practice, and policy of the District of Columbia permitting live and loaded firearm(s) and ammunition in training sessions and in the Anacostia Neighborhood Library; and also, as a direct result of the District of Columbia's failure to train or the inadequate training of the involved sworn members of the MPD and the Public Library Special Police Force on:

      a.   Securing one's live and loaded firearm(s) (weapon) in a safe place outside the training building before entering the building or entering the training space;

      b.   when to secure your own and verify that no person has a live and loaded firearm(s) and ammunition in a training space;

      c.   prohibiting police officers and former police officers from having live and loaded firearm(s) and ammunition in the public library;

      d.   when to report the use of or presence of live and loaded firearm(s) and ammunition in the training space or building prohibiting same;

      e.   prohibiting police officers and former police officers from having live and loaded firearm(s) and ammunition in a training room/space or training session;

      f.   the necessity of promptly stripping Porter or any police officer/former police officer of his/her live and loaded firearm(s) and ammunition upon observing same upon entering the public library, before, during and after baton training;

      g.   the necessity of immediately effectuating an arrest when a misdemeanor occurs in their presence;

      h.   the necessity of and when to verify no police officer or trainer has a live and loaded firearm(s) or ammunition inside a training session or the building for which training is to occur;

      i.   The necessity of having a no-live and loaded firearm(s) and ammunition policy posted and communicated to all persons participating in a training session;

      j.   When to report the pointing of a training gun at a trainee;

      k.   How to report the pointing of a training gun at a trainee;

l.   The prohibition against pointing a live and loaded firearm(s) at any person; even in jest.

m.   The inherent dangers of pointing a live and loaded firearm(s) at any person at any time.

Demonstrating a reckless disregard for Manyan's rights protected under the 4th and 5th Amendment to the United States Constitution.

171.   Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim under the Survival Act, as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

172.   Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., jointly and severally; and, Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendants Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., and the District of Columbia; reasonable attorney's fees pursuant to 42 USC sec. 1988, costs and such other and further relief to which Plaintiffs may be entitled.

## COUNT IX  - GROSS NEGLIGENCE

173. Plaintiffs incorporate as if fully stated herein all of the allegations contained in all paragraphs.

174. All defendants' behavior was, at all times were as agents of the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.  Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

175. Under District of Columbia law, gross negligence "requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful, and reckless disregard or conscious indifference for the rights and safety of others." *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997); *see also District of Columbia v. Hawkins*, 782 A.2d 293, 300 (D.C. 2001).

176. At all relevant times the District of Columbia exercised coercive power and control over the behavior of Porter in directing him when, where, and how to train its trainees as well as encouraging overtly the practice of carrying a live and loaded and loaded weapon into the training session endangering Maurica Manyan (without the policy and practice of allowing live and loaded and loaded weapons into buildings and without Porter bringing the live and loaded and loaded weapon into the building pursuant to it, Manyan would not have been harmed).

177. Defendant Porter's conduct was wanton, willful, and/or malicious and a breach of its duty owed to all Plaintiffs to not expose them to unnecessary danger or harm;  caused plaintiffs to suffer severe emotional distress upon the realization that Manyan, their daughter and

mother, was shot in the chest and was dying; and, that Manyan's colleagues were standing to the immediate right and left of Manyan, in the zone of danger, at the time of the shooting.

178.   Defendants' conduct was wanton, willful, and/or malicious in shooting an unarmed person, Ms. Manyan, after a training session after she had taken off her protective gear and was merely posing for a photograph.

179.   Defendants Anthony Mickens and Byron Purnell were acting within the scope of their employment as sworn members of the Metropolitan Police Department and the DC Public Library Special Police Force and for the benefit of the District of Columbia at all relevant times in observing and assisting Porter's conducting a training session with a live and loaded and loaded weapon on his person.  Further, both Mickens and Byron as sworn law enforcement officers had an obligation to stop Porter from conducting the subject training with a live and loaded firearm(s) and ammunition.

180.   Defendant District of Columbia's actions in maintaining a policy and practice of permitting trainers to conduct training sessions with live and loaded firearm(s) and ammunition and failing to require a prohibition of live and loaded weapons in training session after multiple complaints of the danger and unsafe environment created by its practice and policy of allowing police officers and former police officers to maintain their live and loaded weapons in training sessions and training buildings is extreme and outrageous.

181.   Defendants' caused Plaintiff to suffer severe emotional distress as was observed by all witnesses to her shooting; and evinced by her grasping for air, grabbing her chest in disbelief, and struggling to breathe.

182.   All of plaintiffs' claims are due solely to and by reason of defendants' negligent and reckless conduct.

183.   On 8/25/2023 Jesse Porter entered a valid guilty plea to and was found guilty of involuntary manslaughter for the shooting death of Maurica Manyan.

184.   Plaintiffs Radcliffe Manyan, Sherene Manyan and D.M. claim relief as the biological father, mother and son (respectively) of Maurica Manyan; for whom each bore and continue to bear severe emotional distress, severe mental anguish, loss of society and comfort caused by the loss of Maurica Manyan as a result of the extreme and outrageous conduct of all defendants.

185.   Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

186.   Plaintiffs Radcliffe Manyan and Sherene Manyan as personal representatives of the Estate of Maurica Manyan bring this action under the Wrongful Death Act on behalf of D.H., Radcliffe Manyan and Sherene Manyan, next of kin, for maintenance and assistance each would have received had Maurica Manyan not been killed as well as the value of services Maurica Manyan would have provided had she live and loaded as well as the cost of reasonable burial expenses.

187.   Maurica Manyan's co-trainees suffered and continue to suffer severe emotional distress at the time of the shooting and continue to suffer severe emotional distress as a result of standing shoulder-to-shoulder of Maurica Manyan at the time of her shooting death. Maurica Manyan's co-trainees' were caused to be in danger of physical injury and feared for their own respective safety as a result of defendants' actions.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and

David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages from Defendants District of Columbia, Jesse Porter, Jr., and Porter Consulting and Expert Tactical Training, LLC., Anthony Mickens, and Byron Purnell, in their individual capacity, jointly and severally; attorneys' fees and such other and further relief to which Plaintiffs may be entitled.

### COUNT X  - TORTIOUS INTERFERENCE WITH A DEAD BODY

188.  Plaintiffs incorporate as if fully stated herein all of the allegations contained in all paragraphs.

189.  All defendants' behavior was, at all times were as agents of the District of Columbia, instigated by and dependent upon the exercise of the District of Columbia's governmental authority.  Porter at all relevant times engaged in a function traditionally exclusively reserved to the State, the training of police officers; and, at all times relevant the government acted jointly with Jesse Porter, Jr. in his actions complained of in this suit.

190.  Under District of Columbia law, tortious interference with a dead body consists of denying close family members the right to view and have access to the decedent's body, whether the acts were intentional, grossly negligent, or merely negligent.

191.  At all relevant times the District of Columbia refused the Plaintiffs access to the dead body of Maurica Manyan, even though access to the body was requested.

192.  Defendants' conduct was intentional, grossly negligent, or merely negligent and a breach of its duty owed to all Plaintiffs to not expose them to unnecessary danger or harm; caused plaintiffs to suffer severe emotional distress upon the realization that they had no access to Manyan's body, their daughter and mother, was shot in the chest and was dying.

193.    Plaintiffs Radcliffe Manyan, Sherene Manyan and D.M. claim relief as the biological father, mother and son (respectively) of Maurica Manyan; for whom each bore and continue to bear severe emotional distress, severe mental anguish, loss of society and comfort caused by the loss of Maurica Manyan as a result of the extreme and outrageous conduct of all defendants.

194.    Plaintiffs Radcliffe Manyan and Sherene Manyan bring this claim as personal representatives of the Estate of Maurica Manyan for her conscious pain and suffering and future earnings Maurica Manyan would have earned had she not died.

195.    Maurica Manyan's co-trainees suffered and continue to suffer severe emotional distress at the time of the shooting and continue to suffer severe emotional distress as a result of standing shoulder-to-shoulder of Maurica Manyan at the time of her shooting death. Maurica Manyan's co-trainees' were caused to be in danger of physical injury and feared for their own respective safety as a result of defendants' actions.

**WHEREFORE,** Plaintiffs RADCLIFFE MANYAN and SHERENE MANYAN, individually and in their capacity as the co-personal representatives of the Estate of Maurica Alex Manyan, and David Harris, Jr., as father and next friend of D.M., claim Thirty Million Dollars ($30,000,000.00) in compensatory damages and Twenty Million Dollars ($20,000,000.00) in punitive damages from Defendant District of Columbia; attorneys' fees and such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

_____
Chelsea Lewis, Bar ID: 229547
Lewis Law
8201 Peters Road, Ste. 1000
Plantation, Florida 33324
954-869-8456(o)

1-888-388-7360 (f)
Chelsea@lewislawesq.com
Secondary E-Mails:
eservice@lewislawesq.com
*Attorneys for Plaintiff*

_____

A. Dwight Pettit, Bar ID: 945402
Law Office of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, Maryland 21215
410-542-5400 (0)
410-664-7520 (f)
adpettit@adwightpettit.com
*Attorney for Plaintiff*

_____

Latoya Francis-Williams, Bar ID: MD0203
Law Office of Latoya A. Francis-Williams, LLC
P.O Box 451
Randallstown, Maryland 21133
410-356-4691 (o)
443-548-4588 (f)
lfwlaw1@gmail.com
*Attorney for Plaintiff*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RADCLIFFE MANYAN, SR.,<br>as next of kin and as the Co-Personal<br>Representative of the Estate of Maurica<br>Alex Manyan<br>4720 Quimby Avenue,<br>Beltsville, MD 20705<br><br>SHERENE MANYAN,<br>as next of kin and as the Co-Personal<br>Representative of the Estate of Maurica<br>Alex Manyan<br>4720 Quimby Avenue,<br>Beltsville, MD 20705<br><br><br>TO THE USE OF DAVID BARRINGTON<br>HARRIS, JR.<br>Next Friend and Father of Son D.M., next of<br>kin<br>2442 Martin Luther King, Jr., SE, Apt. 517<br>Washington, DC 20020-5816<br><br>    Plaintiffs,<br><br>v.<br><br>**DISTRICT OF COLUMBIA**<br>a municipal corporation<br>441 Fourth Street, NW<br>Washington, D.C. 20001<br>**Serve on:**<br>MAYOR MURIEL BOWSER<br>Office of Mayor<br>1600 Pennsylvania Avenue, NW<br>Washington, D.C. 20001<br>Designee:<br><br>OFFICE OF THE ATTORNEY GENERAL<br>Brian Schwalb<br>District of Columbia<br>441 Fourth Street, NW<br>Washington, D.C. 20001<br><br>and | CIVIL ACTION NO.: |

**JESSE PORTER, JR.**
1217 Upshur St., NE,
Washington, DC, 20017-3831

and

**PORTER CONSULTING AND EXPERT**
**TACTICAL TRAINING LLC**
1200 G Street NW, Suite 800
Washington, DC, 20005
**Serve On**:
Jesse Porter, Jr.
1217 Upshur St., NE,
Washington, DC, 20017-3831

600 Ava Circle NE
Washington, District of Columbia, 20017

and

**ANTHONY MICKENS**
3310 Croffut Pl SE
Washington, DC 20019

and

**BYRON PURNELL**
5002 Hayes Street, Northeast
Washington, DC 20019

      Defendants.

---

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues and all counts of this Complaint so triable as

a matter of right.

Dated: October 25, 2023

Respectfully submitted,

_____
Chelsea Lewis, Bar ID. 229547
Lewis Law
8201 Peters Road, Ste. 1000
Plantation, Florida 33324
954-869-8456 (o)
1-888-388-7360 (f)
Chelsea@lewislawesq.com
Secondary E-Mails:
eservice@lewislawesq.com
*Attorney for Plaintiffs*

_____
A. Dwight Pettit, Bar ID. 045402
Law Office of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, Maryland 21215
410-542-5400 (0)
410-664-7520 (f)
adpettit@adwightpettit.com
*Attorney for Plaintiff*

_____
Latoya Francis-Williams, Bar ID MD0203
Law Office of Latoya A. Francis-Williams, LLC
P.O Box 451
Randallstown, Maryland 21133
410-356-4691 (o)
443-548-4588 (f)
lfwlaw1@gmail.com
*Attorney for Plaintiff*